UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
SEP 2 5 2017
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

ERNESTO JAVIER DE LA CRUZ-FLORES §
§
Plaintiff, §
§ Civil No. SA-16-CV-707-RCL
v. §
§
UNITED STATES OF AMERICA §
§
Defendant. §

## Memorandum Opinion

The Court has before it (1) Defendant's Motion to Dismiss (ECF #13), (2) Plaintiff's Motion for Leave to Amend Pleading (ECF #18) ("motion to amend"), and (3) Defendant's Motion to Stay Discovery Pending Resolution of Its Motion to Dismiss (ECF #22) ("motion to stay"). For the reasons that follow, the Court will **GRANT** Defendant's motion to dismiss and **DENY** the other motions.

## Background

Plaintiff Ernesto Javier De La Cruz-Flores was arrested on July 25, 2015, in Eagle Pass, Texas. (ECF #13-2, ¶4). Two days later, Mr. De La Cruz-Flores was transferred to the custody of the U.S. Immigration and Customs Enforcement ("ICE"). (ECF #1, ¶¶7-8; ECF #13-2, ¶4). The next day, on July 28, 2015, ICE agents interviewed Mr. De La Cruz-Flores to investigate his immigration status and determine whether he qualified for removal under U.S. immigration laws. (ECF #13-2, ¶5; ECF #1, ¶¶10-11). According to the official record of that interview, (ECF #13-2, Exhibit 1), Mr. De La Cruz-Flores told ICE the following information (the text of the relevant interview questions is provided in the footnotes):

1

(1) That he was a citizen of Mexico,[1] born in Mexico.[2]

(2) That he was not and had never claimed to be a citizen of the United States.[3]

(3) That his father was a United States citizen and his mother was a Mexican citizen.[4]

(4) That his mother had immigrated legally to the United States.[5]

(5) That he had legally immigrated to the United States in 1993.[6]

(6) That he possessed a resident card, which is not typically given to U.S. citizens.[7]

(7) That he had been arrested and convicted of aggravated second degree battery, a felony, in Louisiana.[8]

Armed with this information, the ICE agents issued a warrant for Mr. De La Cruz-Flores's arrest and began the deportation process pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "Any alien who is convicted of an aggravated felony at any time after admission is deportable." (ECF #13-2, ¶9; ECF #1, ¶17).

But it turned out that Mr. De La Cruz-Flores was wrong when he told ICE that he was not a United States citizen. On August 19, 2015, Mr. De La Cruz-Flores's attorney "sent ICE a letter claiming . . . that [Mr. De La Cruz-Flores] qualified for derivative citizenship under 8 U.S.C.

---

[1] Q. Of what country are you a citizen?
   A. Mexico.
[2] Q. What is your date and place of birth?
   A. 1989 in Piedras Negras, Coah, MX.
[3] Q. Have you ever claimed to be a citizen or resident of the United States?
   A. No.
[4] Q. Of what country are your parents citizens?
   A. My dad is a U.S. citizen . . . and my mother is a Lawful Permanent Resident, born in Mexico.
[5] Q. Have either of your parents legally immigrated to the United States?
   A. Yes, my mother is a resident.
[6] Q. Have you ever legally immigrated to the United States, and if so when?
   A. In 1993, I became a resident through my dad.
[7] Q. Do you have any document issued by a legal authority that permits you to legally enter, reside, or be lawfully employed in the United States? If so, why did you not present it?
   A. I have my resident card.
[8] Q. Have you ever been arrested by the police in the United States?
   A. I was arrested in Louisiana for Aggravated 2nd Degree Battery. . . . I was sentenced to 3 years' probation and did like 2 days at the county jail.

2

§ 1401(g)" and provided documents to ICE proving that Mr. De La Cruz-Flores did indeed qualify for derivative citizenship. (ECF #13-2, ¶10; ECF #1, ¶24). Mr. De La Cruz-Flores was released from ICE custody the next day, having spent 24 days in detainment. (ECF #13-2, ¶14; ECF #1, ¶¶24–25).

On July 13, 2016, Mr. De La Cruz-Flores sued the United States under the Federal Tort Claims Act ("FTCA") for false imprisonment. (ECF #1). The United States moved to dismiss the claim for lack of subject matter jurisdiction on September 13, 2016. (ECF #13). After the motion to dismiss was fully briefed, Mr. De La Cruz-Flores filed a motion to amend his complaint, (ECF #18), which motion the United States opposes. Additionally, the United States moved the Court to stay discovery pending resolution of its motion to dismiss. (ECF #22). The Court now considers these motions in turn.

## The United States' Motion to Dismiss

### I. Legal Standard

The United States moves to dismiss Mr. De La Cruz-Flores's false imprisonment claims for lack of subject matter jurisdiction under Rule 12(b)(1). (ECF #13). When a challenge is raised to a court's subject matter jurisdiction, the burden is on the party asserting jurisdiction to prove that jurisdiction does in fact exist. (*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Therefore, the burden is on Mr. De La Cruz-Flores to show that this Court has jurisdiction to hear his claims, not on the United States to prove that this Court does not. In considering this motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (*Id.* (quoted in *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016))).

The United States asserts that this "Court lacks jurisdiction over Plaintiff's false imprisonment under the [FTCA]." (ECF #13). As a sovereign entity, the United States is immune from suit except to the extent that it consents to be sued. (*F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). Whether "the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." (*Tsolmon*, 841 F.3d at 382 (citing *Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013))). The FTCA is a waiver of sovereign immunity that grants courts jurisdiction to hear state law tort actions against the United States. (28 U.S.C. § 2674; *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010)).

But this waiver of sovereign immunity is riddled with exceptions and exceptions to the exceptions. One of these exceptions is the "discretionary function" exception, found in 28 U.S.C. § 2680(a), which reads as follows:

> The provisions of this chapter . . . shall not apply to—
> (a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Put in layman's terms, the "exception preserves the government's sovereign immunity when the plaintiff's claim is based on an act by a government employee that falls within that employee's discretionary authority." (*Tsolmon*, 841 F.3d at 382). The discretionary exception's purpose is "to protect the government from judicial second guessing." (*Sutton v. United States*, 819 F.2d 1289, 1293).

A government employee's actions fall within the discretionary exception if two conditions are met. First, the government employee's actions must be truly discretionary; that is, the acts must "involve an element of judgment or choice." (*United States v. Gaubert*, 499 U.S. 315, 322 (1991)). If a "federal statute, regulation, or policy specifically prescribes a course of

4

action for an employee to follow" such that "the employee has no rightful option but to adhere to the directive," then the necessary element of choice is absent. (*Id.*). Second, the judgment/choice made by the government employee must be of "the kind that the discretionary exception was designed to shield." (*Id.*). If a "government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." (*Id.* at 324–25). If both of these conditions are met, then the government employee's actions fall within the discretionary exception and the United States' sovereign immunity deprives a court of subject matter jurisdiction to hear the case. "Decisions to investigate, how to investigate and whether to prosecute generally fall within this exception." (*Nguyen v. U.S.*, 65 F. App'x 509, 509 (5th Cir. Mar. 31, 2003)).

But there is a possible exception to the discretionary exception—the law enforcement proviso. The law enforcement proviso, found at 28 U.S.C. § 2680(h), reads, in pertinent part, as follows:

> [W]ith regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter . . . shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

Put simply, the law enforcement proviso "waives sovereign immunity for the intentional torts of law enforcement and investigative officers." (*Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009), *on reh'g en banc*, 608 F.3d 266 (5th Cir. 2010)).

The interaction between § 2680(h) and § 2680(a) has presented a problem for many courts, and courts have been split on how to treat them. The Ninth Circuit, for example, has found that the discretionary function overpowers the law enforcement proviso, such that if "a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain

an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." (*Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994)). The D.C. Circuit has reached the same conclusion, holding that a plaintiff "must clear the 'discretionary function' hurdle and satisfy the 'investigative or law enforcement officer' limitation to sustain" an FTCA claim. (*Gray v. Bell*, 712 F.2d 490, 508 (D.C. Cir. 1983). But the Eleventh circuit has reached the opposite conclusion, finding that the law enforcement proviso, as the more recently enacted provision, overwhelms the discretionary function exception, so that "if a claim is one of those listed in the proviso to subsection (h), there is no need to determine if the acts giving rise to it involve a discretionary function; sovereign immunity is waived in any event." (*Nguyen v. United States*, 556 F.3d 1244, 1257 (11th Cir. 2009)). Mr. De La Cruz-Flores encourages the court to adopt the Eleventh Circuit's interpretation.

But this Court is not bound by Eleventh Circuit decisions, nor is it bound by D.C. or Ninth Circuit decisions. This Court is bound by Fifth Circuit decisions, and the Fifth Circuit has chosen to take the middle road. Therefore, the discretionary function exception and the law enforcement proviso do not "exist independently of the other nor does one predominate over the other. Both sections recognize serious legitimate policies that must be preserved." (*Sutton*, 819 F.2d at 1295). The exact method for balancing the policies underlying each provision has not been clearly set forth by the Fifth Circuit. *Sutton* seemed to advocate for a fact-intensive inquiry aimed at "achiev[ing] the legislative purpose expressed in the words of the statute[s] and in light of existing law and policy behind the statute[s]." (*Id.* at 1300). A later Fifth Circuit case seemed to make "bad faith" the deciding factor—torts described in § 2680(h) involving intentional misconduct or bad faith would fall within the law enforcement proviso while torts involving mere negligent conduct or simple errors of judgment would fall within the discretionary function

6

exception. (*See Nguyen*, 65 F. App'x at 509 ("In harmonizing the two provisions in this case, it is significant that the INS officers did not . . . engage in any conduct that could be described as in bad faith.")).

Recently, several district courts within the Fifth Circuit have applied the "bad-faith framework" when confronted with cases similar to the one now before the court. (*See Tsolmon v. United States*, No. H-13-3434, 2015 WL 5093412, at *14 (S.D. Tex. Aug. 28, 2015) (*aff'd in Tsolmon*, 841 F.3d at 383) (holding that application of the law enforcement proviso was inappropriate absent allegations of "intentional misconduct or bad faith"); *Camacho v. Cannella*, No. EP-12-cv-40-KC, 2012 WL 3719749, at *9 (W.D. Tex. Aug. 27, 2012) (when "the alleged conduct crosses the line from negligent conduct to intentional misconduct or bad faith, the discretionary exception yields to the law enforcement proviso, and the lawsuit can proceed"); *Campos v. United States*, 226 F. Supp. 3d 734, 742 (W.D. Tex. 2016) ("Regardless of how Plaintiff couches her allegation, they do not rise to the level of intentional misconduct or bad faith.")). The Court agrees with these cases in finding that the bad-faith framework is the appropriate method of reconciling § 2680(a) and § 2680(h). The framework is both simple and sensible, balancing the need to protect law enforcement officers from judicial second guessing with the need to find and deal with the rotten apples.

**II.   Discussion**

Now that the legal framework for this analysis has been established, the application of the facts to this case is straightforward. First, the Court will evaluate whether the ICE agents' actions in investigating and detaining Mr. De La Cruz-Flores involved an element of judgment or choice. Second, the Court will evaluate whether the ICE agents' choices were of the kind that the discretionary exception was designed to shield. And finally, if necessary, the Court will evaluate

whether the ICE agents' actions involved intentional misconduct or bad faith such that their actions would fall under the law enforcement proviso.

### A. The ICE Agents' Actions Did Involve an Element of Judgment or Choice, Satisfying the First Prong of the Discretionary Function Analysis.

Mr. De La Cruz-Flores, as the party attempting to establish jurisdiction, has the burden of showing that the ICE agents' of whose actions he complains did not have discretion to act as they did. Mr. De La Cruz-Flores fails to meet this burden. He argues that the ICE agents did not have discretion to arrest and detain him because ICE agents are not authorized to detain U.S. citizens. (ECF #1, ¶19). But this contention is insufficient to overcome the discretionary function exception. The decision of whether to arrest and detain a person for suspected violations of immigration law is laden with public policy considerations and discretionary judgments. This is proven by the statute authorizing such arrests, 8 U.S.C. § 1357(a)(2), which reads in relevant part:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall *have power* without warrant—
> (2) . . . to arrest any alien in the United States, if he has *reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is *likely* to escape before a warrant can be obtained for his arrest.

(Emphasis added). The italicized portions are all words that show the discretion that the ICE agents had when they made the decision to arrest and detain Mr. De La Cruz-Flores.

First, the agents "have power" to arrest. They are not mandated by the statute to arrest every alien whose arrest may be justified. They simply have power to do so. This indicates an element of discretion in the statute.

Second, the agents need "reason to believe" that any aliens they arrest have violated U.S. law. There is no precise standard for defining when an agent has "reason to believe." Rather, agents must, in their day-to-day operations and interactions, evaluate the factual circumstances

8

they encounter and make judgment calls about whether the evidence they have gives them "reason to believe" a given person is detainable.

Third, the warrantless arrest (and note that the ICE agents in this case did eventually get a warrant) is permitted only if the alien is "likely" to escape before a warrant can be obtained. That "likely," again, requires a judgment call on the part of the ICE agents concerning each individual with whom they interact. Clearly this "statute . . . leaves it to [the federal agents] to determine when and how to take action." (*Spotts*, 613 F.3d at 567 (citing *Gaubert*, 499 U.S. at 329)). That is discretion.

In this case, the ICE agents had to make just such a discretionary judgment call. On the one hand, Mr. De La Cruz-Flores explicitly told them that he was not an American citizen, but rather a Mexican citizen. He also gave them further evidence indicating that he was not a U.S. citizen, such as stating that he had a resident card, which is not normally given to U.S. citizens. On the other hand, he provided them with information that (viewed generously) provided evidence that he was in fact a U.S. citizen—his father was a U.S. citizen, he immigrated here legally when he was four, etc. Presented with this information, the ICE agents had to make several judgment calls. They had to decide which of Mr. De La Cruz-Flores's statements to believe, if any. They had to decide whether to conduct further investigation after the initial interview. They had to decide whether the results of their preliminary investigation gave them reason to believe that Mr. De La Cruz-Flores was in violation of United States immigration laws. And in all of these judgment calls, the ICE agents had discretion to act.

Mr. De La Cruz-Flores argues that the ICE agents should not have made—or rather that they did not need to make—a judgment call. He argues that because he provided the agents

with information that made his being a citizen a possibility,[9] the "federal agents had no authority to rely on [his] statement that he was a citizen of Mexico." (ECF #16). That argument is absolute nonsense. Law enforcement officials are not required to ignore a suspect's inculpatory (condemning, even) statements just because he also provides some exculpatory ones. The ICE agents were well within their authority to believe Mr. De La Cruz-Flores when he told them he was not a citizen of the United States, just as they would have been well within their authority to give greater weight to his statements tending to show the possibility that he was a citizen of the United States. It was up to their discretion, and that is the point.

Mr. De La Cruz-Flores's argument, then, ultimately is that the ICE agents were, in the end, wrong. Mr. De La Cruz-Flores is a rightful citizen of the United States, and was therefore not a detainable alien. But "there is no requirement that the decisions made by law enforcement officers during the investigation or prosecution of a case must be correct to fall within the discretionary function exception." (*Hodgson v. United States*, No. SA:13-CV-702, 2014 WL 4161777, at *11 (W.D. Tex. Aug. 19, 2014) (citing *Kelly v. United States*, 924 F.2d 355 (1st Cir. 1991)); *see also* 28 U.S.C. § 2680(a) (stating that the discretionary function exception applies "whether or not the discretion involved be abused")). Alternatively, his argument is that the ICE agents should have moved faster such that they would have discovered their error in fewer than 24 days. But that is a criticism of ICE's decisions regarding how to conduct their investigation, implicating policy considerations of the priority and level of scrutiny to give to Mr. De La Cruz-Flores's case. Such considerations are within the core of the discretionary function exception's protective ambit. Thus, the ICE agents' decision to investigate Mr. De La Cruz-Flores, their

---

[9] Mr. De La Cruz-Flores argues that the information he gave to ICE during his initial interview "clearly demonstrated" that he was a U.S. citizen. (ECF #16). This is not so, as will be explained later, but it does not affect the current analysis.

decisions concerning how to conduct that investigation, and the conclusion drawn from their investigation were all discretionary acts.

### B. The ICE Agents' Actions Were of the Sort that the Discretionary Function Was Designed to Shield, Satisfying the Second Prong of the Analysis

Having determined that the ICE agents' actions in this case were discretionary, the Court now must evaluate whether the agents' actions were the kind of discretionary actions that the discretionary function was designed to shield. (*Gaubert*, 499 U.S. at 321). Key to this inquiry is whether the discretionary actions involved public policy considerations. (*Spotts*, 613 F.3d at 568 (citing *Gaubert*, 499 U.S. at 324 ("[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act . . . involves consideration of the same policies which led to the promulgation of the regulations."))). "Decisions to investigate, how to investigate and whether to prosecute generally" entail policy considerations that qualify them as the sort of actions the discretionary function was designed to cover. (*Nguyen*, 65 F. App'x at 509). This is true in the immigration context as well. Here, the ICE agents' "discretionary actions in investigating [Mr. De La Cruz-Flores's] immigration status, interpreting the information received, and in deciding" to detain him pending removal (even for 24 days) "were susceptible to policy analysis. Thus, the second prong of the discretionary function has been satisfied." (*See Tsolmon*, 2015 WL 5093412, at *11 (*aff'd in Tsolmon*, 841 F.3d at 383)).

Because both conditions for the application of the discretionary function exception are satisfied, the Court finds that the exception applies to deprive the Court of subject matter jurisdiction over this case unless the law enforcement proviso also applies.

## C. The Law Enforcement Proviso Does Not Apply to this Case Because There Is No Evidence of Intentional Misconduct or Bad Faith

As discussed earlier, under Fifth Circuit law, the law enforcement proviso waives the United States' sovereign immunity in cases in which law enforcement officials engage in intentional misconduct or bad-faith acts that amount to, among other torts, false imprisonment. The ICE agents in this case unquestionably qualify as law enforcement officials. However, nothing in this case indicates that they engaged in intentional misconduct or acted in bad faith. Therefore, the law enforcement proviso does not apply to this case.

Mr. De La Cruz-Flores argues that the agents did engage in intentional misconduct or bad-faith acts. This is so, he argues, because the agents knew full well that he was a United States citizen when they arrested and detained him for 24 days. He argues that the agents knew he was an American citizen because, despite explicitly telling them he was a non-citizen, he also told them information that conclusively proved his citizenship under 8 U.S.C. § 1401(g). And because he alleged facts that were enough to establish his citizenship under that section, the agents knew he was a citizen and could only have acted maliciously in detaining him for 24 days.

Mr. De La Cruz-Flores's argument fails for two independently sufficient reasons. First, even if Mr. De La Cruz-Flores had made assertions that, if true, were sufficient to establish his citizenship under § 1401(g), those assertions could only give rise to knowledge in the ICE agents if they in fact believed those assertions. And Mr. De La Cruz-Flores gave plenty of reasons for the ICE agents not to believe those assertions. For example, he told the agents that he was not a United States citizen. It is common sense, really—if you tell immigration officials that you are (1) a non-citizen and (2) a convicted felon, then it should come as no surprise when they arrest and detain you. Such statements are more than enough to create a reasonable belief that you broke immigration laws. In such a situation there is no evidence of intentional misconduct or bad faith.

Second, Mr. De La Cruz-Flores did not allege sufficient information in his initial interview to establish his citizenship under § 1401(g). As such, even if the ICE agents believed every word he said (and there is nothing to indicate they did not), his statements were not enough to give rise to knowledge that he was an American citizen. Under § 1401(g), a person is a United States citizen at birth if the following conditions are met:

> (1) The person is born outside the United States
>
> (2) One of the person's parents is an alien and the other is a United States citizen
>
> (3) Prior to the person's birth, the United States citizen parent was physically present in the United States for periods totaling at least five years, two of which must have been after the parent turned 14 years old.

In his initial interview with ICE, Mr. De La Cruz-Flores told ICE that he was born in Mexico (fulfilling the first condition) and that his father was a United States citizen while his mother was a citizen of Mexico (satisfying the second condition). However, nothing in the record indicates that Mr. De La Cruz-Flores ever told the ICE agents that his father was physically present in the United States for five years prior to his birth, two of which were after the age of 14. And when ICE finally did receive proof of that information, they released Mr. De La Cruz-Flores. Nothing in this fact pattern evidences either intentional misconduct or bad faith on the part of the ICE agents. Therefore, the law enforcement proviso does not apply.

### III. Conclusion

Because the discretionary function exception to the FTCA's waiver of sovereign immunity applies in this case, and because the law enforcement proviso does not apply to reinstate that waiver, the Court finds that it does not have subject matter jurisdiction to hear this case. Accordingly, the United States' Motion to Dismiss (ECF #13) will be **GRANTED**.

### Mr. De La Cruz-Flores's Motion for Leave to Amend Pleading

Mr. De La Cruz-Flores asks this Court for leave to file an amended complaint. (ECF #18). The only substantive difference between the original complaint and the amended complaint is that the amended complaint changes "the statutory citation and scheme under which Plaintiff automatically became a United States citizen." (ECF #18-1, ¶4). While "[l]eave to amend complaints should be freely given in the interests of justice," (Fed. R. Civ. P. 15(a)(2); *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)), a court may deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss." (*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010)). To avoid a premature determination on the merits, leave to amend should only be denied if the proposed amendment is clearly futile. (*See* Charles Alan Wright, et al., *Federal Practice and Procedure*, § 1487 (2d ed. 1990)). Here, Mr. De La Cruz-Flores's proposed amendment is clearly futile and must be denied.

In Mr. De La Cruz-Flores's original complaint, he claimed that the ICE agents who interviewed him knew or should have known he was a United States citizen under 8 U.S.C. § 1401(g), but in his amended complaint he alleges that the ICE agents knew or should have known he was a United States citizen under 8 U.S.C. § 1431. This change is irrelevant. As shown above, the statutory scheme under which Mr. De La Cruz-Flores claims citizenship plays no part in the analysis of the discretionary function exception. It also plays no part in the analysis of the law enforcement proviso in this case because Mr. De La Cruz-Flores, by telling the ICE agents that he was a non-citizen and also a convicted felon, gave them reason to believe he was a removable alien regardless of any other statements he made, which authorized them to arrest and detain him.

And even if that were not enough, just as with § 1401(g), Mr. De La Cruz-Flores did not provide ICE agents with enough information to definitively conclude that he was a United States citizen under § 1431. Under § 1431, a "child born outside of the United States automatically becomes a citizen of the United States" when four conditions (three statutory and one technical) are met:

> (1) "At least one parent of the child is a citizen of the United States . . . .
> (2) "The child is under the age of eighteen years.
> (3) "The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." (8 U.S.C. § 1431(a)).
> (4) The above three conditions were met on or after February 27, 2001, the date on which § 1431 became law.

In his initial interview with ICE agents, Mr. De La Cruz-Flores informed them that his father was a United States citizen (satisfying the first condition) and that he came to the United States with his father as a lawful permanent resident in 1993 at the age of four (satisfying the second and part of the third conditions). However, nothing in the record indicates that he gave them any information showing that he was in the legal and physical custody of his father on or after February 27, 2001. As such, he did not provide ICE with sufficient information with which to conclude that he was an American citizen, even if he had not told them that he was a non-citizen.

Because the statutory scheme under which Mr. De La Cruz-Flores claims citizenship is irrelevant, his proposed amended complaint is futile. For that reason, his Motion for Leave to Amend Pleading (ECF #18) will be **DENIED**.

### The United States' Motion to Stay Discovery Pending Resolution of Its Motion to Dismiss

The Court will grant the United States' Motion to Dismiss. Therefore, the United States' Motion to Stay Discovery Pending Resolution of Its Motion to Dismiss (ECF #22) will be **DENIED AS MOOT**.

## Conclusion

For the reasons stated above, the Court will **GRANT** the United States' Motion to Dismiss (ECF #13), **DENY** Mr. De La Cruz-Flores's Motion for Leave to Amend (ECF #18), and **DENY AS MOOT** the United States' Motion to Stay Discovery (ECF #22).

A separate order shall issue this date.

SIGNED this \_\_\_25th\_\_\_ day of September, 2017.

_____
HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE